**SERV–AIR, INCORPORATED, Appellant,**

v.

**Robert C. SEAMANS, Jr., Secretary of the Air Force.**

**No. 72–1616.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 25, 1972.

Decided Nov. 20, 1972.

Mr. James A. Dobkin, Washington, D. C., with whom Messrs. Daniel A. Rezneck and Stephen M. Sacks, Washington, D. C., were on the brief, for appellant.

Mr. William D. Appler, Atty., Dept. of Justice, with whom Mr. E. Grey Lewis, Acting Asst. Atty. Gen., Messrs. Harold H. Titus, Jr., U. S. Atty., and William D. Fleischer, Atty., Dept. of Justice, were on the brief, for appellee. Mr. Michael A. Katz, Asst. U. S. Atty., also entered an appearance for appellee.

Before WRIGHT, McGOWAN and LEVENTHAL, Circuit Judges.

LEVENTHAL, Circuit Judge:

This is an appeal from the denial of the prayer of plaintiff-appellant, Serv-Air, for a preliminary injunction to restrain the Air Force from permitting performance to begin on two contracts awarded to Page Aircraft Maintenance, Inc., for operation and maintenance services at Vance and Shepard Air Force Bases.

■ The District Court, in findings and conclusions not reported, concluded that plaintiff had not made a showing which would permit the court to make "a considered judgment of a probability of success on the merits,"[1] and further concluded that there was a rational basis for award of these contracts to the lowest bidder.[2] We affirm.

Plaintiff contends that the award to Page was based on price, and that although the statute, 10 U.S.C. 2304(g), and regulations, require, in the case of negotiated contracts, that price discussions be conducted with all responsible offerors who submit proposals within a competitive range, no price negotiations were conducted with Serv-Air. Our comments as to the merits are not intended to be dispositions of the issue, but rather to indicate that plaintiff has not shown probability of success. In that context, it appears to us that the record shows that the Air Force personnel gave Serv-Air an equitable opportunity to submit price and other revisions in proposals as might result from negotiations conducted to resolve uncertainties or clarify the intention of the bid.[3] Here there were extended negotiations with Serv-Air, including not only negotiation letters but also three negotiation conferences. These brought aspects of Serv-Air's technical proposal to its attention, cautioned that nothing beyond the RFP (Request For Proposal) requirements should be priced out, and even advised Serv-Air that "your proposed manning for your overhead function appears to be high." Serv-Air made substantial reductions as a result of "taking cognizance of comments expressed." Yet its "best and final offer" was more than $1 million higher than that of Page.

■ Serv-Air complains that the Air Force did not engage in "the traditional series of offers and counter-offers looking to a mutually satisfactory agreement." While such had been conducted with Serv-Air when it was the sole bidder, this was not required in a context of two or more responsible bidders. Indeed, the regulations expressly prohibit "auction" techniques in a multiple negotiation setting.[4]

■ Serv-Air also alleges that the award should be set aside because the wage and fringe benefits Page proposes to pay are not in accordance with the requirements of the Service Contract Act, 41 U.S.C. § 351. There is nothing in the record to support Serv-Air's assertion beyond the hearsay affidavit of the belief of its vice-president. Page's president submitted an affidavit of compliance with the statute. We need not consider whether the exclusive vehicle for enforcement of this Act rests solely with the Secretary of the Air Force and Secretary of Labor. Assuming plaintiff's standing, its showing does not meet the standards of *Steinthal* and *Wheelabrator*.

■ One aspect of the District Court opinion merits our attention. The District Court noted the passage in *Steinthal*, 455 F.2d at 1302–1303, indicating that even in instances of a court's determination that there was no rational basis for the agency's decision, there is room for sound judicial discretion in the presence of overriding public interest con-

1. Wheelabrator Corp. v. Chafee, 147 U.S. App.D.C. 238, 455 F.2d 1306 (1971).

2. Steinthal & Co. v. Seamans, 147 U.S. App.D.C. 221, 455 F.2d 1289, 1301 (1971).

3. See ASPR–804, 32 C.F.R. 3.804 (1972).

4. ASPR 3.805–1(b), 32 C.F.R. 3.805–1(b) (1972).

sideration to refuse declaratory or injunctive relief in a pre-procurement litigation. The District Court's findings satisfy us that this reference played no material role in its decision. Yet to avoid future misunderstanding, we think it should be made clear that this passage, which would remit the wronged bidder solely to relief by way of damages, a relief that is probably limited to items like bid preparation costs, is to be applied only in extreme situations, as where relief would delay or interfere with supply of items urgently needed in military operations. Since here the services could have been continued by Serv-Air under a temporary formula, and the difference to the Government would only have been monetary, this passage of *Steinthal* would have had no rightful application.

The District Court denied the preliminary injunction at a time when plaintiff's protest to the General Accounting Office was still under consideration. The order of this court, denying a stay and setting an expedited appeal, provided that a copy of its opinion be sent to the GAO. The Comptroller General's opinion, issued September 25, 1972—on the morning we heard oral argument—stated:

"The order of the Court of Appeals provided that a copy should be sent to our Office and appears to have contemplated that our decision would be included in the court's consideration of the matter. Consequently, we have considered issues raised by the protest which, but for the interest and involvement of the Court of Appeals, we would have dismissed as untimely under our Interim Bid Protest Procedures and Standards. 4 CFR 20, *et seq.*"

This procedural flexibility is responsive to the interests that courts and officials proceed with full regard for and accommodation to the other's province. It is a rightful corollary to the rule of primary jurisdiction developed in *Wheelabrator*. It remains only to add that we have studied the Comptroller General's opin-

ion, and find that his analysis, while differing in some respects with the position of the procurement activity on other matters, is in accord with the views of the government officials on the matters we have considered of particular importance.

Affirmed.