**ADVO–SYSTEM, INC., Plaintiff,**

**v.**

**Juanita M. KREPS et al., Defendants.**

**Civ. A. No. 79–0257.**

United States District Court, District of Columbia.

March 20, 1979.

Milton Eisenberg, Melvin E. Rishe, John T. Boese, Lawrence R. Sidman, Eric J. Zahler, Washington, D. C., for plaintiff.

Lillian McEwen, Washington, D. C., for defendants.

MEMORANDUM OPINION

GESELL, District Judge.

This matter comes before the Court on the motion of plaintiff, as a disappointed government contract bidder, for a preliminary injunction. The issues have been fully briefed and argued following certain limited but informative discovery.

In planning the 1980 Census, the Bureau of the Census ("Census") of the Department of Commerce decided to use an Advance Post Office Check ("APOC") to monitor the currency of the addresses it possesses for several million of the nation's residents. Plaintiff, Advo-Systems, Inc. ("Advo"), is the country's largest bulk mailer. Through long experience it has developed a method to maintain and update its national address list through the use of postal carrier routes. Advo's method provides relatively accurate and effective controls over the entire updating process, including that portion performed by the United States Postal Service ("Postal Service").

Advo contends that the Bureau of the Census asked it and others on August 1, 1977, to bid on a proposal for performing the Census's APOC, and that on September 12, 1978, the defendant acknowledged that Advo had proved to be the only concern competent to do the work desired. Plaintiff complains that after learning all the details of the Advo system Census determined in January 1979 to perform the job itself and illegally terminated all negotiations, this in spite of the fact that Advo could supposedly perform the contract at less cost than could the Census in-house. Further, plaintiff alleges that Census is now considering the performance of an APOC program in some respects substantially different from that considered in the original proposal solicitation and is contemplating that the program be conducted in conjunction with the Postal Service without putting the revised APOC specifications up for bid as allegedly required by law and the applicable procurement regulations. Finally, the plaintiff maintains that the Census, in performing the APOC in-house, will be pirating plaintiff's proprietary information, revealing such information to third-party competitors, and breaching various assurances of confidentiality.

Serious questions are presented on the facts of record before the Court and plaintiff's contentions cannot be taken lightly. Advo seeks an injunction directing the Secretary to comply with applicable procurement laws and regulations and to grant the APOC contract to plaintiff. Advo also seeks to prohibit Census from utilizing or revealing to third parties Advo's APOC system.

In support of its argument that the Secretary is proceeding in violation of procurement rules, Advo presents a highly technical series of contentions which require a thorough understanding of the procurement regulations and applicable statutes. The Court is unwilling at this stage conclusively to determine whether or not defendant has proceeded in a lawful manner, although after reading the regulations cited it would seem that Advo does enjoy a substantial probability of success. Certainly it appears from the facts before the Court that the Secretary rejected plaintiff's bid proposal without making an adequate determination that the Census could perform the work at less expense either in-house or in conjunction with the Postal Service. In other words, no compelling or sufficient reason for the Census's decision may exist and other legal requirements may have also been transgressed by the defendants in terminating the negotiations. It also appears that, while the APOC arrangement now being discussed between Census and the Postal Service differs significantly from the specifications contained in the original solicitation, this new arrangement was never generally put out for bid or negotiation. Indeed, the Secretary has made no effort to determine whether or not its present plans for conducting an APOC can be met by the private sector at less expense to the Government and the plaintiff maintains that the present proposal can in fact be performed by it at a cost substantially below the cost which was indicated in its original proposal.

Plaintiff cites numerous procurement regulations, *see* 41 C.F.R. §§ 1–2.404–1, 1–3.302(c), 1–3.210, 1–3.805–1(b) & (d), and asks that they be interpreted and applied in the light of the overall pattern of procurement regulations, having in mind the thrust of the Economy Act of 1932, 31 U.S.C. § 686(a), and the explicit requirements of OMB Circular A–76. At oral argument it was indicated that the GAO has already initiated an audit in connection with this situation. For this reason and also because of the GAO's expertise in the procurement area, the Court has determined that, under the doctrine of primary jurisdiction, it will seek the benefit and advice of the GAO before finally resolving the regulatory and statutory issues. It is, of course, important that these issues be resolved with utmost despatch. The Court will accordingly enter an order referring the matter to the GAO and enjoining the Secretary from taking any dispositive final action until the GAO reports its findings and conclusions to the Court. Only in this fashion can Advo's showing of likely irreparable injury and the needs of the public interest be satisfied. In reaching its conclusion, the Court has been guided by the following significant decisions of the United States Court of Appeals for the District of Columbia Circuit: *Serv-Air, Inc. v. Seamans*, 154 U.S.App.D.C. 28, 473 F.2d 158 (1972); *M. Steinthal & Co. v. Seamans*, 147 U.S.App.D.C. 221, 455 F.2d 1289 (1971); *Wheelabrator Corp. v. Chaffee*, 147 U.S.App.D.C. 238, 455 F.2d 1306 (1971); *Scanwell Laboratories, Inc. v. Shaffer*, 137 U.S.App.D.C. 371, 424 F.2d 859 (1970).

■ Turning now to plaintiff's effort to enjoin the Secretary from using any proprietary or confidential aspect of Advo's APOC system, the Court has concluded that an insufficient showing has been made to justify any injunction. While Advo asserts that Census intends to use its system, Census vigorously asserts the contrary. The arrangements being negotiated between Census and the Postal Service for conducting the APOC have not been put in final form. In addition, some aspects of plaintiff's system are admittedly already known to third parties, particularly to the Postal Service. In short, there are many uncertainties regarding what exactly the government intends to do and it cannot be determined on the record now before the Court whether or not any action should be taken or in fact is even needed to protect all or part of plaintiff's proprietary information. Plaintiff, therefore, has not met its burden of establishing an imminent threat that its trade secrets will be appropriated or revealed.

Furthermore, plaintiff has failed to identify with the certainty that is needed those aspects of its system not already in the public domain. It is impossible on the present record for the Court to define with the clarity required of an injunctive order the nature of plaintiff's trade secrets so that, should it determine that an injunction ought to issue, the Court would be in a position to specify the conduct to be prohibited and the conduct to be permitted.

Finally, there has been a complete absence of proof as to what steps plaintiff has taken to protect its proprietary information from competitors and the extent to which competitors may or may not already know how Advo's APOC program is conducted. *See generally Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 474–76, 94 S.Ct. 1879, 40 L.Ed.2d 315 (1974); *Ashland Oil Co. v. FTC*, 409 F.Supp. 297, 303 (D.D.C.), *aff'd*, 179 U.S.App.D.C. 22, 548 F.2d 977 (1976).

Although a preliminary injunction is denied as to this phase of the case, nothing that the Court has said is designed in any manner to affect plaintiff's remedies at law. Plaintiff may indeed have several such remedies, but on the record that is now before the Court, plaintiff has not met its burden under *Washington Metropolitan Area Transit Commission v. Holiday Tours Inc.*, 182 U.S.App.D.C. 220, 559 F.2d 841 (1977), and its request for a preliminary injunction as to its alleged trade secrets is accordingly denied.

A form of order reflecting the foregoing determinations has been filed with this Memorandum Opinion which constitutes the Court's findings of fact and conclusions of law.