**AERO CORPORATION, S.A., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 97-416C.**

United States Court of Federal Claims.

June 20, 1997.

Robert J. Martinez, Washington, DC, for plaintiff. Barbara E. Wixon, and Williams & Jensen, P.C., of counsel.

Joseph A. Kijewski, Department of Justice, Washington, DC, with whom was Assistant Attorney General Frank W. Hunger, for defendant. David M. Cohen, Director, Civil Division; and John E. Lariccia, Greg Petkoff, and Marian E. Sullivan, Department of the Air Force, Office of the General Counsel, of counsel.

## OPINION AND ORDER

FUTEY, Judge.

This matter is presently before the court on plaintiff's application for a temporary restraining order and motion for preliminary injunction, which plaintiff filed pursuant to 28 U.S.C. § 1491(b) (1994), *as amended by* Administrative Dispute Resolution Act of 1996, Pub.L. No. 104–320, 110 Stat. 3870, 3874–75 (1996), and RCFC 65.[1] Plaintiff initiated this action after its proposal, which was submitted in response to defendant's Solicitation No. F41608–96–R–0254, was excluded from the competitive range by defendant. Plaintiff argues that its proposal was improperly excluded and seeks to enjoin defendant from proceeding with any further activities under the solicitation until plaintiff's proposal is reinstated in the competitive range. Defendant responds that plaintiff has not demonstrated the need for such extraordinary relief.

### Factual Background

On February 11, 1997, defendant, acting through the Department of the Air Force, issued Solicitation No. F41608–96–R–0254 (the solicitation). The purpose of the solicitation was "to determine whether the C–5 depot maintenance activity currently performed at the San Antonio Air Logistics Center[, Kelly Air Force Base, Texas,] should be privatized or transferred to another public depot for performance."[2] Plaintiff submitted its proposal in response to the solicitation on April 14, 1997.

By letter dated May 21, 1997, defendant's contracting officer notified plaintiff that its proposal had been eliminated from the competitive range. Under the terms of the solicitation, a proposal could be excluded from the competitive range based upon: (1) an unrealistic cost or price; (2) evidence that an offeror does not understand the requirement; or (3) major technical or business deficiencies, or omissions, that cannot reasonably be cured through discussions with the

1. Based upon the representations of plaintiff's counsel that plaintiff's memorandum in support of its motion for preliminary injunction also supports its application for a temporary restraining order, for purposes of this opinion and order, the court treats plaintiff's application for a temporary restraining order and motion for preliminary injunction together.

2. Solicitation Documents, Complaint for Injunctive and Declaratory Relief (Compl.), Attachment 1 at 1.

offeror.[3] Included with defendant's notification letter to plaintiff was a "Competitive Range Determination" (the Determination), which provides the basis for the Source Selection Authority's decision to exclude plaintiff's proposal. Generally, the Determination asserts that plaintiff's proposal failed to "adequately address the essential requirements of the solicitation."[4] In that regard, the Determination identifies six specific requirements and the alleged deficiencies in those areas: (1) transition; (2) production operations; (3) corporate operations; (4) logistics support; (5) source of repair; and (6) cost.

Plaintiff received a debriefing from defendant regarding its disqualification on June 4, 1997. During the debriefing, defendant gave a slide presentation that identified the allegedly deficient technical areas in plaintiff's proposal with either a red or a yellow marking. A red marking signified the areas that "fail[ed] to meet a minimum requirement of the [solicitation]" and were uncorrectable through discussions or negotiations."[5] A yellow marking denoted the areas that, although they "failed to meet evaluation standards[,] . . . any significant deficiencies are correctable."[6] Of the technical areas identified by defendant as deficient, three were given red markings and two were given yellow markings. In addition, plaintiff's cost proposal was deemed to be incomplete and unrealistic. According to plaintiff, defendant indicated during the debriefing that the three technical areas with red markings, along with plaintiff's cost proposal, were the elements of the evaluation that supported defendant's decision to exclude plaintiff's proposal from the competitive range. Plaintiff also alleges that defendant acknowledged during the debriefing that the two technical areas with yellow markings were not valid bases for the exclusion of plaintiff's proposal from the competitive range.

On June 12, 1997, plaintiff filed its application for a temporary restraining order and motion for preliminary injunction. In its filings, plaintiff asserts that defendant violated the solicitation and applicable law by excluding plaintiff from the competitive range based upon the alleged deficiencies listed in the Determination and described during the debriefing. In support of its position, plaintiff argues that the Determination contains erroneous factual assertions regarding the contents of plaintiff's proposal, and cites alleged major technical requirements that either are not part of the solicitation or are incorrectly interpreted. Plaintiff maintains that its proposal complies with all of the essential requirements of the solicitation. Plaintiff therefore alleges that defendant's actions deprive plaintiff of the opportunity to compete for this contract without substantial justification. Accordingly, plaintiff asserts that its proposal should be reinstated in the competitive range before the remaining offerors begin discussions and negotiations with defendant. After the start of such discussions, plaintiff contends that it will not have a fair opportunity to compete for award. Defendant refutes these claims and maintains that plaintiff has not shown a need for the emergency relief it seeks.

The court heard oral argument on plaintiff's application for a temporary restraining order and motion for preliminary injunction on June 17, 1997. The parties' filing and statements made by counsel during oral argument indicate that the offerors who were found to be within the competitive range (remaining offerors) have submitted clarification requests (CRs) and deficiency requests (DRs) to defendant. During oral argument, counsel for defendant further stated that, unless the court grants the requested injunctive relief, defendant plans to proceed with all aspects of the procurement short of contract award.[7] With respect to contract award, counsel for defendant assured the

---

3. *Id.,* § M–900, ¶ 3.0.

4. Notification of Exclusion from Competitive Range (Notice), Compl., Attachment 2 at 2.

5. Memorandum in Support of Motion for Preliminary Injunction (Mem.) at 3 (quoting Debriefing Slides (Slides), Compl., Attachment 3 at 2).

6. *Id.* (quoting Slides, Compl., Attachment 3 at 2).

7. Transcript (Tr.) at 43.

court that no award would be made prior to the issuance of the court's decision on the merits of plaintiff's claim.[8]

## Discussion

■ It is well-settled that the court's review of an agency's pre-award procurement decision is extremely limited in scope. *Bean Dredging Corp. v. United States*, 22 Cl.Ct. 519, 522 (1991); *see also Baird Corp. v. United States*, 1 Cl.Ct. 662, 664 (1983). As such, the court must exercise "great caution" in considering requests for injunctive relief. *DeMat Air, Inc. v. United States*, 2 Cl.Ct. 197, 201 (1983). When reviewing such requests, the court applies a four-part test. *Cincom Sys., Inc. v. United States*, 37 Fed. Cl. 266, 268 (1997); *see also PNM Constr., Inc. v. United States*, 13 Cl.Ct. 745, 747 (1987). It is the plaintiff's burden to show, by clear and convincing evidence, that it satisfies all four parts of this test. *Cincom*, 37 Fed.Cl. at 268; *see also Baird*, 1 Cl.Ct. at 664. More specifically, in order to prevail on its application or motion, plaintiff must affirmatively establish that: (1) plaintiff will suffer a specific irreparable injury if defendant's performance is not enjoined; (2) the harm to plaintiff in not granting the requested relief outweighs any potential harm to defendant in granting such relief; (3) granting the requested relief serves the public interest; and (4) plaintiff is likely to succeed on the merits of its claim. *Cincom*, 37 Fed.Cl. at 268; *see also Bean Dredging*, 22 Cl.Ct. at 522.

### A. Irreparable Harm

■ Plaintiff claims that it will be irreparably harmed if the requested injunctive relief does not issue, arguing that, absent such relief, it will be denied the opportunity to compete for the contract award at issue.[9] In addition, plaintiff asserts that the loss of potential profits on the contract constitutes irreparable harm. Such contentions are,

however, overstated, especially given the fact that defendant's counsel has represented that no contract award will be made until after the court renders its decision on the merits of plaintiff's claim. Thus, should plaintiff prevail on the merits of its claim, its proposal would be fully and fairly considered by defendant prior to contract award. Indeed, the court must presume that plaintiff would receive equal consideration in such circumstances. *See Finley v. United States*, 31 Fed.Cl. 704, 706 (1994) (noting the existence of a strong presumption that procuring officials act properly and in good faith when making procurement decisions), *appeal dismissed*, 50 F.3d 21 (Fed.Cir.1995). This presumption is not rebutted by plaintiff's arguments regarding the fact that defendant might be required to conduct a second round of submissions of best and final offers (BAFOs) with plaintiff and the remaining offerors should plaintiff ultimately prevail on its claim.

In plaintiff's view, allowing the remaining offerors to submit two BAFOs, while only allowing plaintiff to submit one, would constitute irreparable harm to plaintiff. In presenting its argument, plaintiff makes much of the fact that 48 C.F.R. § 15.611(b) (1996), requires a common cutoff date for the submission of BAFOs. It also should be noted, however, that 48 C.F.R. § 15.611(a) (1996), provides that the contracting officer, upon completion of discussions, shall issue requests for BAFOs to "all offerors *still* within the competitive range." *Id.* (emphasis added). Thus, a request for BAFOs will be issued to plaintiff only if it prevails on the merits of its claim *and* its proposal is found to be within the competitive range. In such circumstances, a second BAFOs round would be initiated with a cutoff date that would be the same for plaintiff and all offerors still within the competitive range.[10]

8. *Id.; see also id.* at 14. At the present time, the contemplated award date is August 12, 1997. Although defendant's counsel has indicated that defendant will wait longer if need be, *id.* at 14, the court is committed to rendering its decision on the merits of plaintiff's claim prior to that date.

9. Plaintiff estimates the cost of the work, as currently performed by defendant, to be in excess of $100 million per year.

10. Further, the regulations specifically contemplate that a second round of BAFOs may be required in certain circumstances. In that regard, 48 C.F.R. § 15.611(c) (1996), provides that a contracting officer may reopen discussions af-

Although plaintiff contends that its inclusion in a second BAFOs round would not alter the fact that plaintiff will be irreparably harmed absent injunctive relief, such a charge is based more on speculation than fact.[11] Indeed, during oral argument, counsel for plaintiff stated: "[d]espite good faith from the contracting officer and the Court's order, I don't know that my client gets a fair shot if he is evaluated after the SSEB [Source Selection Evaluation Board] has a proposed [sic] and an award decision has been made."[12] "Injunctions, however, will not issue to prevent injuries neither extant nor presently threatened, but only merely 'feared.'" *Exxon Corp. v. FTC*, 589 F.2d 582, 594 (D.C.Cir.1978) (quoting *Connecticut v. Massachusetts*, 282 U.S. 660, 674, 51 S.Ct. 286, 291, 75 L.Ed. 602 (1931)), *cert. denied*, 441 U.S. 943, 99 S.Ct. 2160, 60 L.Ed.2d 1044 (1979); *see also International Graphics v. United States*, 4 Cl.Ct. 515, 522 (1984). Thus, plaintiff's speculative claims are not sufficient to demonstrate irreparable harm, especially in light of the tenet that contracting officials are presumed to act in good faith. *See Finley*, 31 Fed.Cl. at 706.

In sum, plaintiff has not demonstrated that any possible harm it may suffer would be irreparable. *Cf. Cincom*, 37 Fed.Cl. at 268 (rejecting an irreparable harm claim where, in the event of success on its claim, the complaining plaintiff could have been substituted for the contract awardee). Furthermore, plaintiff has failed to show that effective relief would be unavailable to it after a decision by the court on the merits of its claim. The court's assurance that it will address the merits of plaintiff's claim in an expedited manner further supports this conclusion. *See id.*

**B. Balance of Harms**

██ Plaintiff further contends any harm that injunctive relief may cause defendant is less significant than the harm plaintiff will suffer if its request is denied. Initially, plaintiff notes that, although consideration of plaintiff's claim may cause a slight delay in the evaluation/negotiations process of the procurement, such delay will not prejudice defendant's interests. Similarly, plaintiff argues that, if the requested relief is granted and defendant is directed to evaluate plaintiff's proposal as within the competitive range, the procurement process will suffer only an additional slight delay; whereas, in absence of such relief, the resulting harm to plaintiff will be great.

The court, however, is not convinced that any harm which may be suffered by plaintiff outweighs the harm which may be suffered by defendant. As previously noted, any perceived immediate harm to plaintiff could be remedied should plaintiff ultimately prevail on the merits of its claim. By contrast, if the court were to grant the requested injunctive relief and then reject plaintiff's claim on its merits, the resultant harm to defendant, as well as the remaining offerors, would be great.

Specifically, defendant would be forced to delay its consideration of the remaining proposals in anticipation of a decision by the court on the merits of plaintiff's claim. As such, if plaintiff's claim were to be denied on its merits, the progress of this procurement would have been needlessly delayed. As pointed out in the declaration of Major General James S. Childress, the solicitation addresses military preparedness concerns and thereby implicates interests of national defense, which are a factor that the court must consider in the balance-of-harms analysis. Section 1491(b)(3); *see also Cincom*, 37 Fed. Cl. at 269. The fact that a delay in the conduct of this procurement would raise national defense concerns clearly places the

---

ter receipt of BAFOs if "it is clearly in the Government's interest to do so.... If discussions are reopened, the contracting officer shall issue an additional request for [BAFOs] to all offerors still within the competitive range." *Id.* Clearly, it would be in defendant's interest to take such actions if they are the necessary result of a court order directing defendant to fully and fairly consider plaintiff's proposal.

11. The same also is true of plaintiff's contention that it will suffer irreparable harm due to the loss of potential profits on the contract. *See Keco Indus., Inc. v. United States*, 192 Ct.Cl. 773, 428 F.2d 1233, 1240 (1970).

12. Tr. at 19.

weight of the balance-of-harms factor on defendant's side of the scale.

The balance-of-harms scale further tips in defendant's favor because defendant has guaranteed that no contract award will be made until after the court issues its decision on the merits of plaintiff's claim. In light of this promise and in accordance with the preceding discussion, the court is satisfied that, should plaintiff ultimately prevail on its claim, defendant will fully and fairly consider plaintiff's proposal prior to rendering a final award decision. The court therefore concludes that the potential harm to defendant outweighs any possible harm to plaintiff.

### C. Public Interest

■ Plaintiff also contends that the public interest will be served by the granting of the requested injunctive relief. Specifically, plaintiff asserts that granting such relief not only will preserve the integrity of the federal procurement process, but also will protect the fisc because inclusion of plaintiff's proposal in the competitive range will help to insure cost savings to defendant.

Clearly, the public interest in honest, open, and fair competition in the procurement process is compromised whenever a plaintiff is improperly excluded from that process. *Cincom*, 37 Fed.Cl. at 269; *see also Magellan Corp. v. United States*, 27 Fed.Cl. 446, 448 (1993). It is equally clear, however, that a procuring agency should be able to conduct procurements without excessive judicial infringement upon the agency's discretion. *Cincom*, 37 Fed.Cl. at 269; *see also Magellan*, 27 Fed.Cl. at 448. In light of the fact that a determination in favor of plaintiff on the merits of its claim will reinstate consideration of plaintiff's proposal, the court determines that the integrity of the procurement process will not be compromised by a denial of the requested injunctive relief at this time. Additionally, the public interest balance tilts in defendant's favor due to the need for defendant to maintain military preparedness while at the same time scaling back military operations in accordance with legislative dictates. Finally, the court need not consider plaintiff's arguments regarding protection of the fisc because defendant has assured the court that no contract will be awarded until the court issues its decision on the merits of plaintiff's claim.

In brief, the court's prompt review of the merits of plaintiff's claim will both protect the public interest in fair competition and preserve defendant's right to conduct procurements with minimal judicial interference. Therefore, public interest considerations do not require that the court grant the injunctive relief plaintiff seeks.

### D. Likelihood of Success on the Merits

■ It is well-settled that, in order to succeed on a request for injunctive relief, a plaintiff must satisfy every element of the requisite four-part test. *See Cincom*, 37 Fed.Cl. at 268; *Bean Dredging*, 22 Cl.Ct. at 522. In the present case, however, the court already has determined that plaintiff has failed to prove its entitlement to the requested relief under at least three parts of that test. Namely, plaintiff has not affirmatively shown that: (1) plaintiff will suffer irreparable harm without the requested relief; (2) the possible harm to plaintiff outweighs any potential harm to defendant and other third parties; and (3) granting the requested relief serves the public interest. Because plaintiff has failed to demonstrate these required elements, in denying plaintiff's request for injunctive relief, the court need not determine whether plaintiff is likely to succeed on the merits of its claim.

Indeed, in making such a determination, the court would be required to decide whether the action taken by the procuring officials in excluding plaintiff's proposal from the competitive range had a rational or reasonable basis. *See Caddell Constr. Co. v. United States*, 7 Cl.Ct. 236, 240–41 (1985); *see also Rockwell Int'l Corp. v. United States*, 4 Cl.Ct. 1, 3 (1983) (noting that plaintiff bears the burden to show that a rational or reasonable basis is lacking). Clearly, such a determination tends to go to the merits of plaintiff's argument that defendant breached its implied duty of fair dealing with plaintiff. *See Keco Indus., Inc. v. United States*, 203 Ct.Cl. 566, 492 F.2d 1200, 1203–04 (1974) (listing reasonable basis among the factors that the court must consider in determining

whether a breach occurred). As such, and in light of the foregoing conclusion that the court may properly deny plaintiff's request for injunctive relief without addressing the matter of the likelihood of plaintiff's success on the merits of its claim, the court will not consider the reasonableness of defendant's actions at this time.

*Conclusion*

For the above-stated reasons, plaintiff's application for a temporary restraining order and motion for preliminary injunction are denied. Further proceedings in this case are to be conducted in accordance with the court's order dated June 17, 1997.

IT IS SO ORDERED.