**HELI–JET CORPORATION, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 328–83C.**

United States Claims Court.

May 31, 1983.

**10.** See *supra* note 7.

Keith Baker, Washington, D.C., for plaintiff; Trammell, Chase, Lambert & Martindale, Washington, D.C., of counsel.

Alvin A. Schall, Washington, D.C., with whom was J. Paul McGrath, Asst. Atty. Gen., Washington, D.C., for defendant; Lynn Flanagan, Dept. of Agriculture, Washington, D.C., of counsel.

## ORDER DENYING TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

YANNELLO, Judge.

Plaintiff's complaint, seeking a temporary restraining order, a preliminary injunction, and such other relief as appropriate, was filed on May 23, 1983. On that same day, a Conference Call was held, with counsel for both parties, to discuss a hearing schedule and to define the issues.

Defendant's response was filed in the morning of May 24. It alleged the court's lack of jurisdiction and plaintiff's inability to satisfy the criteria necessary to warrant the specific relief requested. Consequently, defendant also moved for summary judgment.

A hearing was conducted on May 24, 1983, from 11:00 a.m. to 4:45 p.m. E.D.T. At the outset of the hearing, counsel, in response to the judge's inquiry, stated that the purpose of the hearing was to enable a ruling on plaintiff's requests for a temporary restraining order and a preliminary injunction. In addition, counsel entered into stipulations of fact based on the affidavits and exhibits appended to their motions and memoranda.

The government had agreed to postpone any award of the contract in issue until 5:00 p.m. E.D.T., on May 24, 1983, and the judge issued a decision orally at the conclusion of the hearing, approximately 4:30 p.m. E.D.T. This Order embodies the decision issued during the hearing of this matter.

### Standards of Review

■ Plaintiff seeks a temporary restraining order and preliminary injunction, to prevent the government from making an award of the contract to another bidder.

Such relief as is sought here should be granted only in infrequent and limited circumstances where such relief is clearly appropriate. These strictures have been the subject of comprehensive, and well-reasoned, opinions by other judges of the court, with which this court agrees. *See, e.g.,* the opinions of Judge Lydon in *Baird Corpora-*

*tion v. United States,* 1 Cl.Ct. 662 (Cl.Ct. 1983) and of Judge Nettesheim in *Harris Data Communications Inc. v. United States,* 2 Cl.Ct. 229 (Cl.Ct.1983). It is not necessary to restate here the detailed discussions of those opinions.

█ It is sufficient here to note that plaintiff, if it is to ultimately prevail on the merits, must sustain its burden of establishing:

(1) that the procurement procedure involved a clear and prejudicial VIOLATION OF APPLICABLE STATUTES or regulations; *OR*

(2) that there was NO RATIONAL BASIS for the agency's decision in a matter committed primarily to the contracting officer's discretion.

*See Kentron Hawaii v. Warner,* 480 F.2d 1166 (D.C.Cir.1973).

[3] Moreover, the court must consider, in connection with any grant of injunctive relief, the following:

(1) the LIKELIHOOD OF plaintiff's SUCCESS on the merits (noting the criteria set forth above);

(2) the PUBLIC INTEREST, including any overriding public interest which would warrant, in the exercise of sound judicial discretion, a refusal to grant injunctive relief, even if plaintiff were likely to prevail on the merits;

(3) the possibility of any IRREPARABLE INJURY to the plaintiff if the injunction is not granted, including, but not limited to, the ABSENCE OF ADEQUATE REMEDY at law, and the possibility of any INJURY TO OTHERS if the injunction is granted.

*See N.V. Philips Gloeilampenfabrieken v. United States,* 1 Cl.Ct. 783 (Cl.Ct.1983).

The application of these standards and criteria naturally depend upon the facts of each case.

For the reasons set forth below, it is determined that plaintiff's motion for a temporary restraining order and preliminary injunction should be denied, and defendant's motion for summary judgment should be denied pending further proceedings.

*Facts*

A solicitation for bids was issued by the Department of Agriculture on approximately April 8, 1983, calling for the opening of bids on May 10, 1983. The solicitation contained three items; item 1 related to a negotiated procurement, items 2 and 3 related to competitive bids. Item 2 was set aside for small business, and it is the only item at issue in this case.

The proposed contract relating to item 2 of the solicitation called for aerial spraying of insecticide to control a spruce budworm infestation in certain national forest lands in Oregon. It was anticipated that spraying would begin between June 10 and June 17, 1983, allowing the contractor sufficient time to, *inter alia,* acquire the needed chemicals, and noting the need for timely spraying given the larval cycles of the spruce budworm.

The solicitation, part II, Schedule of Items, page 10 of 13, contained the following language:

For the purpose of establishing offer responsibility, offerors on this item must affirmatively show a minimum application capability for this project of 5000 acres per hour. OFFERORS INDICATING AN APPLICATION CAPABILITY LESS THAT THE MINIMUMS ESTABLISHED ABOVE WILL BE CONSIDERED NON-RESPONSIBLE.

As part of their response to the solicitation, bidders were requested, at page 11 of 13, to provide the following information:

Offerors shall list below the information relative to the aircraft they will use to accomplish the work. Listing will be by make and model of aircraft, "N" number and average production in acres per available hour at the minimum established application rates listed below which include loading, fueling, and ferry time.

The solicitation, at page 13 of 13, pointed out that awards would be made for full

items and that, if a bidder received award of more than one item, all items were to be performed simultaneously. The solicitation continues as follows:

For purposes of establishing contractor's ability to perform, bidder must show capacity for both bid items [2 and 3].

When bids were opened on May 10, there were two bidders: Golden Eagle Helicopter (hereinafter "GEH") whose unit price for the acreage in issue was $6.57, and the plaintiff whose unit price for the acreage in issue was $8.83. Both bidders included a schedule of the aircraft they (purportedly) intended to use in contract performance.

When the bids were opened, the contracting officer announced that GEH was the apparent low bidder, and would receive award of the contract.

He noted that two of the aircraft listed by GEH duplicated those listed by other companies for use on other separate items of the solicitation. The contracting officer did not attempt to separately verify the other aircraft listed by GEH.

However, by letter of May 11, the contracting officer did ask all prospective contractors to furnish, by approximately May 18, firm commitments for the aircraft they intended to use to perform the contract.

Immediately after bids were opened, plaintiff asked the contracting officer for the aircraft identification provided by GEH's bid documents; this information was furnished.

Plaintiff thereupon undertook certain investigatory efforts and advised the contracting officer, by letter dated May 12, 1983, that the information provided by Golden Eagle was inaccurate in a variety of respects. This letter was followed by an affidavit dated May 17.

Plaintiff informed the government that it had contacted the individuals who owned or operated the aircraft identified in GEH's bid and had been advised that the specified aircraft were either inoperable or non-existent or that the owner/operators had not been contacted by GEH with respect to the use of the listed aircraft.

Pursuant to the contracting officer's request of May 11, GEH revised its list of proposed equipment. A new and completely different list was transmitted by telephone on May 17 and by letter on May 18. Attached to the letter were commitments from each of the suppliers of the aircraft GEH now listed.

By May 23, the contracting officers in the solicitation had spoken to each supplier by telephone and confirmed the availability of the equipment.

The contracting officer's affidavit states that "it has been verified that firm commitments have been made [to GEH] for a total of 8 aircraft that meet the required production capability".

The parties have stipulated that GEH has now accurately listed aircraft which are available to it.

The contracting officer's affidavit also states that these available aircraft "meet the required production capability", apparently representing a conclusion to which he has come. This, however, has not been stipulated.

The affidavit presents no detailed discussion as to how the contracting officer reached this determination on production capacity, and the documents furnished with the affidavit do not, on their face, provide sufficient data so as to confirm or compute the production capability of the listed aircraft.

The contracting officer's affidavit also states his ultimate conclusion to the effect that "I have determined that [GEH] is the low bidder and is a responsible bidder."

## DISCUSSION

The primary contentions of the parties will be discussed in order in this section.

### I. Jurisdiction

The defendant contends that the court lacks jurisdiction over the claim presented here because plaintiff-protestor's claim is not based on an unfair consideration or erroneous interpretation of *its bid,* but rath-

**618**

er is based on an allegedly erroneous consideration of the bid of another.

Defendant relies upon the recent decision in *Ingersoll-Rand Company v. United States*, 2 Cl.Ct. 373 (1983); KOZINSKI, C.J.) and particularly the language at page 376, as follows:

> The jurisdiction of the court under section 1491(a)(3) is limited to situations where a bid complies with the terms of a bid invitation but is, nevertheless, not fully and fairly considered. It is the *plaintiff's* compliance with the solicitation that forms the consideration for the implied contract of fair dealing. * * * * * [emphasis supplied]

Defendant thus argues that because plaintiff's compliance with the solicitation is not here in issue, it's bid was fully and fairly considered and the court therefore lacks jurisdiction.

Notwithstanding defendant's contentions to the contrary, it is clear from a reading of this decision in its entirety that the purpose of the quoted language was to distinguish between two types of claims: (1) a claim based on alleged unfair considerations of the bids (over which the court has jurisdiction) and (2) a claim based on errors not in the consideration of the bids but in the very issuance of the solicitation pursuant to which the bids were submitted, over which Chief Judge Kozinski concluded the court lacks jurisdiction. That decision should not be read as intending to address the issue now presented by the government.

■ In any event, it is here determined that this court does indeed have jurisdiction over the present action, pursuant to 28 U.S.C. § 1491(a)(3).

■ The obligation of the government upon the issuance of a solicitation is to treat *all* bidders fairly and to give full consideration to all bids. This obligation cannot be met when the government accords different treatment to different bidders. Thus, the violation of this implied duty appears when the protestor's bid is incorrectly considered to its detriment (and other bids are properly considered) and it appears with no less force or effect when the protestor's bid is correctly considered (but when other bidders benefit from improper standards of consideration.)

The jurisdiction of our predecessor court, with respect to the award of monetary damages for bid preparation costs, has long been invoked in situations not unlike the circumstances present here.[1]

For example, in *Tidewater Management Services v. United States*, 216 Ct.Cl. 69, 573 F.2d 65 (1978), the plaintiff, along with 13 other companies including Integrity Management, submitted a proposal for mess attendant services. Integrity had analyzed the performance requirements differently than had the government estimators and was thus, through its somewhat original and innovative approach, able to submit the lowest proposal. Integrity received the contract award and the plaintiff filed suit for bid preparation costs alleging that the bid of Integrity was deficient, and that the government had erred in its consideration and evaluation thereof in three respects. (There was no allegation of error with respect to the government's consideration of plaintiff's own bid.)

Though the court dismissed plaintiff's complaint (holding that the plaintiff had failed to sustain its burdens and that the government properly accepted the bid incorporating innovative and novel approaches), it nonetheless held that it had

---

1. Our predecessor court had noted limited areas to which its jurisdiction did not extent. These situations are not, however, present in the instant case. For example, the plaintiff here is not a "successful bidder" attempting to have his contract revoked by alleging erroneous bid consideration by the government. *See, e.g., Transcountry Packing Co. v. United States*, 215 Ct.Cl. 390, 568 F.2d 1333 (1978).

Nor does plaintiff here (as the next lowest and indeed only other bidder responding to the solicitation) fail to establish that he could expect award of the contract absent the alleged inadequacy of the government's consideration of the bids. *See, e.g., Morgan Business Assoc. v. United States*, 223 Ct.Cl. 325, 619 F.2d 892 (1980).

jurisdiction over the suit. As stated at pages 72 and 73:

> In an unbroken line of cases, this court has recognized its jurisdiction of an action such as this one based on an implied contract which obligates the Government to deal lawfully and in good faith with those who respond to its requests for bids or proposals. [Citations omitted.] ·[*Id.* at page 72.]
>
> \* \* \* \* \* \*
>
> Arbitrary and capricious action on the part of the Government may be shown by proof that there existed no reasonable basis for the award to another. [Citations omitted.] \* \* \*
>
> \* \* \* Plaintiff does contend that there was no reasonable basis for the award to the successful bidder and that a relaxation of the requirements of the Request for Proposal (RFP) resulted in a violation of the law requiring maximum competition and a regulation requiring formal amendment of Government solicitations in certain situations. \* \* \*
>
> [*Id.* at page 73]

Similarly, although issues of jurisdiction were neither specifically raised nor discussed, the Court of Claims, in *Excavation Constr. Inc. v. United States,* 204 Ct.Cl. 299, 494 F.2d 1289 (1974), entertained plaintiff's claim for bid preparation costs where plaintiff alleged that the successful bidder's proposal contained errors and deficiencies, and thus ought not to have been considered by the government.

■ The Federal Courts Improvement Act of 1982, Pub.L. No. 97–164, 96 Stat. 25 (1982), expanded the jurisdiction of this court, in order to provide a more complete remedy, to include certain declaratory and injunctive relief. This jurisdiction to grant such relief in contract claims exists to at least the same extent as this court has jurisdiction to award money damages. This court can discern no authority (nor has any been provided to us by the government

apart from its discussion of *Ingersoll, supra*) for a holding that the court does not have jurisdiction over claims for declaratory or injunctive relief in situations similar to those in which we previously entertained claims for bid preparation costs.

## II. Public Interest; Time of the Essence

At the outset of this decision, we noted the importance of considering the public interest, including any overriding public interest which, in the exercise of sound judicial discretion, would warrant withholding of the injunctive relief sought even if plaintiff were likely to prevail on the merits.

The government has shown the presence of an overriding public interest—particularly by emphasizing that time is of the essence in the award and performance of the subject contract.

The government has furnished affidavits of its contracting officer and its Group Leader for Pesticide Use Management for Region 6, Forest Service. These affiants specifically indicate the need to begin the spraying at the time indicated in view of the larval cycle of the budworm.[2] In addition, the contracting officer indicates that the time between the anticipated award of the contract and the beginning of spraying is expected to be needed to obtain necessary chemicals and to otherwise prepare for contract performance.

■ Although not unmindful of the importance of preserving a procurement system with full and fair consideration of all bidders, the court is persuaded that, even if plaintiff were likely to prevail on the merits, here "time is of the essence" in the award of this contract, and that the "public interest" mandates that there be no delay in that process. *See, e.g., N.V. Philips, supra.*

In addition, as will be discussed in greater detail below, certain actions of the contracting officer in evaluating the bids submitted

---

**2.** The Department of Agriculture has far greater knowledge of and expertise in this subject area than does the court, and great deference is given to the opinion of that agency in this regard. The affidavits before the court sufficiently address the issue as to warrant the court's conclusion as noted herein.

by plaintiff and GEH are properly viewed in light of the fact that the public interest demands that the contract proceed with all deliberate speed.

### III. Consideration of the Merits

#### A. Responsive/Responsible

The plaintiff first contends that the bid of GEH must be rejected because it is not responsive to the solicitation. Specifically, plaintiff asserts that the government violated the provisions of 41 U.S.C. § 253(b) requiring that:

> * * * Award shall be made ... to that responsible bidder whose bid, *conforming to the invitation for bids,* will be most advantageous to the Government, price and other factors considered .... [emphasis supplied]

Plaintiff thus seeks an injunction to prevent the government from considering the bid of GEH or awarding a contract to it, and a declaratory judgment that plaintiff is the lowest bidder responsive to the solicitation. (Presumably such relief if granted could result in award of the contract to plaintiff.)

Plaintiff urges that, since GEH did not provide accurate information in listing the aircraft it intended to use in performance of the contract, GEH's bid was nonresponsive and GEH should thus be prevented from receiving award of the contract. Defendant responds that this is an issue of bidder responsibility, not responsiveness to the solicitation.

In addition to the indications contained in the instant solicitation itself, both parties have referred the court, for guidance, to various decisions of the General Accounting Office.

The information which is at issue here does not relate directly to the goods or services being procured by the contract. Rather, the information is of a collateral nature and deals with the equipment and facilities the bidder intends to use in performing the contract. That is to say, the contract was intended to procure the services of aerial spraying of insecticide, and the information related not to these services themselves but to the equipment the bidders intended to use in providing them.

Put another way, the aircraft information contained in a bid did not affect the legal obligations of the contractor to perform the contract but merely related to a collateral matter, namely the facilities with which the performance would be undertaken.

GAO has defined information affecting the legal obligation of the contractor to perform the contract and provide the goods or services called for therein as data relating to a bid's "responsiveness." Collateral data, such as information regarding a bidder's ability, have been defined as items relating to a bidder's "responsibility." *See, e.g., Matter of Career Consultants Inc.,* B–198727, 80–2 CPD ¶ 285 (October 16, 1980); *Matter of Seacoast Trucking & Moving,* B–200315, 80–2 CPD ¶ 235 (September 30, 1980).

We see no reason whatever to alter such traditional and rational definitions and distinctions.

In the instant case, those portions of the solicitation which relate to equipment or aircraft consistently refer to these collateral items as relating to determinations of a bidder's responsibility or capability or ability to perform. This was clearly the reason for the request for such information, and the court so holds.

Even if the solicitation attempted to characterize the furnishing of such information as a matter relating to responsiveness, such information, by its very nature, would be construed instead as relating to matters of responsibility. *See, e.g., Matter of Houghton Elevator* B–184865, 76–1 CPD ¶ 294 (May 3, 1974); *Matter of Science Applications Inc.,* B–193479, 79–1 CPD ¶ 167 (March 8, 1979.)

Thus, clearly the aircraft information at issue here is defined as relating to bidder responsibility rather than to relate to a matter of responsiveness.

### B. Determination of Responsibility
#### 1. When Made

In this connection, plaintiff further contends that GEH is ineligible for award of the contract because its bid, as initially submitted, contained inaccurate statements as to its responsibility or capacity to perform, specifically: inaccurate or false statements concerning the availability or productivity of certain aircraft equipment.

Traditionally, however, such errors in an initial bid submission have not been grounds for rejection of a bid.

The GAO has long recognized that information relating to a bidder's responsibility need not be furnished with the bid in response to a solicitation, but may be furnished at any time up to the time of the award of the contract. *See, e.g., Matter of BOW Industries,* B–181828, 74–2 CPD ¶ 330 (December 12, 1974); *Matter of Securities Exchange Commission,* B–184120, 75–2 CPD ¶ 9 (July 2, 1975).

 This court sees no reason to change this policy on the facts of this case, and discerns no error in this regard in the government's decision to consider GEH's bid as revised.

#### 2. Availability of Equipment

As noted above, it was not error for the contracting officer to consider the question of GEH's responsibility based on equipment lists revised after the bid opening but before award. Plaintiff further urges, however, that the revised bid information does not establish GEH's ability to perform the contract particularly with respect to the availability of aircraft.

 The regulations in point are found in the Federal Procurement Regulations, 41 C.F.R. Subpart 1–1.12. Pertinent portions of these regulations are set forth in an appendix hereto. The contracting officer has fully complied with these regulations in ascertaining the availability of aircraft to GEH so as to render it responsible of performance.

The contracting officer requested GEH to submit additional information, as is suggested by § 1–1.1205–3. Moreover, the contracting officer verified and confirmed the availability of the helicopters with the sources of the aircraft that GEH intended to use. Indeed, the parties have now stipulated that the equipment described in GEH's revised listing is now available to it.

Accordingly, the contracting officer's consideration of GEH's responsibility insofar as equipment availability is concerned is not in violation of any applicable statutes or regulations and has an eminently rational basis.[3]

#### 3. Capacity of Equipment

One final element of GEH's responsibility is noteworthy. The solicitation also specifically requires that the aircraft available to the bidder have certain production capacity (*i.e.,* 5,000 acres per hour.) The plaintiff alleges that GEH has failed to meet this standard of responsibility.

This is a particularly important matter, since it has been held, at least by GAO, that a bidder must comply with responsibility standards reasonably related to the procurement and set forth in the solicitation with specificity and clarity, as is the situation here. *See, e.g., Matter of Haughton Elevator,* B–184865, 76–1 CPD ¶ 294 (May 3, 1976.)

The facts in this matter cannot be established with certainty, nor could the parties so stipulate, in view of the brevity with which the contracting officer's affidavit discusses the matter and the absence of any supporting documentation or evidence. However, for purposes of assessing the likelihood of plaintiff's success on the merits of this allegation, certain conclusions are appropriate.

---

3. In view of the facts of this case as presented to the court, and the parties' stipulation as to the availability of the aircraft to GEH, it is not necessary here to consider any allegations that the contracting officer's determination of availability was not appropriate based on the evidence presented to him. *See, e.g., Matter of BOW Industries Inc.,* B–181828, 74–2 CPD ¶ 330 (December 12, 1974.)

■ It is fair to conclude from a reading of his entire affidavit, that the contracting officer would testify in any evidentiary proceeding that he verified that the available equipment would meet the capacity requirements set forth in the solicitation of 5,000 acres per hour. Thus, it is fair to conclude that plaintiff, in this connection as well as those discussed above, has little if any likelihood of succeeding on the merits.[4]

### 4. Summary

Based on the foregoing, it is determined that the plaintiff has failed to establish any likelihood of success on the merits with respect to the government's evaluation and determination of GEH's responsibility.

### C. Other Determinations

As has been noted above, there is no error in permitting the bidder GEH to revise its aircraft equipment list after the submission of its bid and before contract award. Moreover, based on the revised list, GEH has properly been found to be a responsible bidder.

The plaintiff advances additional contentions in this regard, however.

First, plaintiff contends that the contracting officer should have investigated the allegations advanced by plaintiff with respect to the deficiencies in GEH's initial equipment list and should have determined the accuracy of the initial bid information, and whether indeed false statements or fraud had been perpetrated, before determining to award the contract to GEH.[5]

Second, plaintiff contends that the inaccuracies or deficiencies in GEH's initial bid are tantamount to false statements or fraud. In connection with these contentions plaintiff refers to 18 U.S.C. § 1001. Plaintiff contends that any findings of false or fraudulent statements in GEH's initial bid submission should automatically render it a nonresponsible bidder and should warrant the rejection of its bid.

In these contentions plaintiff acknowledges that this case may be one of first impression and that there may be no authority in support of plaintiff's position.[6]

■ The plaintiff's first contention is found to be without merit on the facts of this particular case, and it is thus unnecessary to determine the general requirements in such apparently rather novel situations. In the instant case, it has been determined that time was of the essence in the award of the contract in issue. Moreover, the plaintiff's allegations concerning GEH's equipment list went to matters of GEH's responsibility—defects which can be considered at any time prior to contract award and which are not fatal to the bid. Therefore, the contracting officer acted reasonably and within his discretion in turning his attention to determinations of whether GEH would be able, as the lowest bidder, to perform the contract (*i.e.,* whether GEH was responsible) rather than diverting his attention to the matters raised by plaintiff's allegations.

In the face of similar allegations by the plaintiff regarding errors in a competitor's bid in *Excavation Constr. Inc. v. United*

---

4. For purposes of obtaining an ultimate determination on the merits as to whether the government contracting officer properly and fully complied with the regulations in ascertaining whether GEH met the stated capacity requirements of 5,000 acres per hour, the parties were afforded the opportunity of presenting evidence in a trial to be held within days of the preliminary hearing.

On May 25, after the preliminary hearing in this case, plaintiff advised the judge that it would not pursue this aspect of the case, but would instead seek dismissal of that portion of the complaint to which this opportunity was addressed.

5. The contracting officer's affidavit acknowledges that he did not attempt to verify the availability (or presumably the capacity) of each aircraft described in GEH's initial list, but rather requested GEH to furnish confirmation of the aircraft which it intended to use in contract performance.

6. It was noted during the hearing of this case that the parties sought a determination by the court in a very short period of time, with minimal opportunity for either research or reflection. Cases in such a posture are poor vehicles for the enunciation of new law of wide or general application.

*States,* 204 Ct.Cl. 299, 494 F.2d 1289 (1974), the court noted that the government officer was particularly and justifiably interested in expediting the making of the award and the giving of notice to proceed to the successful bidder as promptly as possible. The court, after examining the allegations, the facts surrounding the events, and the officer's actions, concluded that:

> Certainly, considering all the facts and circumstances, there can be no question of the bona fides of the Architect's actions. There is no basis for any conclusion that plaintiff was the subject of arbitrary and capricious discrimination. [204 Ct.Cl. at 307, 494 F.2d 1289]

After full consideration of the facts in the instant case, this court reaches the same conclusion here, namely: that the plaintiff has failed to show that the contracting officer's conduct (particularly in not undertaking investigative efforts concerning the accuracy of GEH's initial equipment listing) is without rational basis or is arbitrary or capricious.

Thus, this court finds no error in the contracting officer's failure to investigate plaintiff's allegations in connection with GEH's bid.

The absence of such investigation by the contracting officer resulted in the absence of any evidence from which to draw firm conclusions as to the nature of GEH's inaccuracies in its bid. For example, such inaccuracies may have resulted from mere inadvertence or from simple neglect. Moreover, in connection with the preliminary hearing to determine whether to grant declaratory or injunctive relief, the court was not provided with any probative evidence or proffers of proof sufficient to establish that indeed GEH had furnished false or fraudulent statements to the government or had otherwise violated the statutes dealing with civil or criminal fraud. Inasmuch as no findings can thus be made in this regard, it is not necessary to address plaintiff's second point as to whether findings of fraud or false statements would preclude award of the contract to GEH.

### D. Summary re: Merits

Based on the foregoing, it is determined that plaintiff has little if any likelihood of success on the merits with respect to any of its allegations of error or wrongdoing in connection with this procurement.

The contracting officer's treatment of the deficiencies in GEH's bid as relating to responsibility rather than responsiveness is in accord with applicable law. The contracting officer's consideration of GEH's responsibility, with respect to the timing of that deliberation and the availability of equipment, as well as with respect to any inquiry into plaintiff's allegations of false statements or fraud, has been found to be in accord with applicable statutes and regulations, to have a rational basis, and to have been neither arbitrary nor capricious. The plaintiff has been found to have little likelihood of success with respect to the merits regarding the contracting officer's consideration of GEH's responsibility insofar as the production capacity of the equipment is concerned.

### IV. Irreparable Harm And Injury

With respect to considerations of the possibility of irreparable harm to plaintiff if the injunctive relief is not granted and of injury to others if the relief is granted, the parties presented brief comments.

Essentially defendant contended that plaintiff had failed to make an adequate showing of irreparable harm, while the plaintiff alleged that, if it were not awarded this contract which it characterized as unique, its owned and leased equipment would remain idle.

In view of this court's findings on its consideration of the public interest and the likelihood of plaintiff's success as discussed above, it is not believed necessary to render further findings with respect to these contentions.

### CONCLUSION

For the foregoing reasons, it has been determined that the plaintiff has little if any likelihood of success on the merits and

that this, coupled with the overriding public interest, given the "time is of the essence" nature of this procurement, warrants a denial of injunctive relief as sought by plaintiff's complaint.

Accordingly, IT IS HEREBY ORDERED that plaintiff's motion for a temporary restraining order and a preliminary injunction is DENIED, and defendant's motion for summary judgment is granted to this extent.[7] The remainder of defendant's motion, to the extent it seeks judgment on the merits, is denied without prejudice pending further proceedings.

## APPENDIX I

Federal Procurement Regulations (1982 edition), Subpart 1–1.12

§ 1–1.1204–1 Requirement.

(a) * * * no contract shall be awarded to any person or firm unless the contracting officer first makes an affirmative determination that the prospective contractor is responsible within the meaning of § 1–1.1202. * * *

§ 1–1.1205–1 [Procedures] General

(a) Before making a determination of responsibility . . . , the contracting officer shall have in his possession information sufficient to satisfy himself that a prospective contractor currently meets the minimum standards set forth in § 1–1.1203, to the extent that such standards are applicable to a specific procurement.

§ 1–1.1205–2 [Procedures] When information will be obtained.

Generally, information regarding the responsibility of a prospective contractor including preaward surveys when deemed necessary (see § 1–1.1205–4),

shall be obtained promptly after bid opening or receipt of proposals. * * *

§ 1–1.1202 General Policy

(a) Purchases shall be made only from, and contracts shall be awarded only to, responsible prospective contractors (see 41 U.S.C. 253(b) and 10 U.S.C. 2305(c)). A responsible prospective contractor is one who meets the standards set forth in §§ 1–1.1203–1 and 1–1.1203–2 * * *.

(b) * * *

(c) * * * A prospective contractor must affirmatively demonstrate his responsibility * * *.

§ 1–1.1203–1 General Standards

A prospective contractor must meet the following requirements, unless otherwise provided in this section:

(a) Have adequate financial resources, * * *;

(b) Be able to comply with the required or proposed delivery or performance schedule, * * *;

(c) Have a satisfactory record of performance. * * *

(d) Have a satisfactory record of integrity and business ethics;

(e) Have a certificate of competency and/or a determination of eligibility from SBA * * *; and

(f) Be otherwise qualified and eligible to receive an award under applicable laws and regulations; e.g., see Subpart 1–12.8.

§ 1–1.1205–3 Sources of Information

Information regarding the responsibility of prospective contractors may be obtained from the following sources:

---

7. The court retains jurisdiction over the remainder of the complaint, notwithstanding the court's understanding that the contract in issue was awarded on May 24 or 25, for such further proceedings as may be requested by the parties and for purposes of considering such further relief as may be appropriate. Defendant, in the hearing before this court, indicated its belief that this court retains jurisdiction even after such contract award where, as here, the complaint was filed prior to award. *See N.V. Philips Gloeilampenfabrieken v. United States,* 1 Cl.Ct. 783 (1983); *Cf. F. Alderete General Contractors Inc. v. United States,* 2 Cl.Ct. 184 (1983; MEROW, J.) The parties cannot, of course, confer jurisdiction upon the court, but this court is inclined to agree with the defendant's position. However, in view of the court's understanding that plaintiff will shortly seek to dismiss the remainder of its complaint, further discussion of this matter will be deferred until such time as the parties invoke the court's jurisdiction in further proceedings and the matter becomes ripe for decision.

(a) Any list of debarred, suspended, or ineligible concerns * * *;

(b) From the prospective contractor. This should include representations and other information contained in or attached to bids and proposals; * * *; lists of tools, equipment, and facilities; * * *. Where it is considered necessary by the contracting officer to prevent practices prejudicial to fair and open competition or for other reasons, prospective contractors may be required to submit statements concerning their ability to meet any of the minimum standards set forth in § 1–1.1203, * * *;

(c) Other information existing within the agency, * * *;

(d) Publications, * * *;

(e) Other sources. These should include suppliers, subcontractors, and customers of the prospective contractor; banks and financing institutions; commercial credit agencies; Government departments and agencies; purchasing and trade associations; and better business bureaus and chambers of commerce.

§ 1–1.1205–4 Preaward surveys

(a) A preaward survey is an evaluation of a prospective contractor's performance capability under the terms of the proposed contract. Such evaluation shall be used by the contracting officer as an aid in determining the prospective contractor's responsibility. The evaluation may be accomplished by use of: (1) Data on hand, (2) data from another Government agency or commercial source; (3) an onsite inspection of plant and facilities to be used for performance of the proposed contract, or (4) any combination of the above. * * *

(b) A preaward onsite survey shall be made when the information available to a purchasing office (see § 1–1.1205–3) is not sufficient to enable the contracting officer to make a determination regarding the responsibility of a prospective contractor (see paragraph (c) of this section). When this situation occurs, the contracting officer shall request the appropriate agency officials to make a preaward survey for the purpose of providing needed responsibility information in such detail as is commensurate with the dollar value and complexity of the procurement. * *