**ISOMETRICS, INC., Plaintiff,**

**Gil, Inc., Intervenor-Plaintiff,**

**v.**

**The UNITED STATES, Defendant,**

**The Sharman Company, Inc., Intervenor-Defendant.**

**No. 714–86C.**

United States Claims Court.

Dec. 17, 1986.

Peter M. Kilcullen, Washington, D.C., for plaintiff; Daniel J. Donohue, of counsel.

Richard P. Fowler, Richmond, Va., for intervenor-plaintiff.

Howard Lipper, Washington, D.C., with whom was Asst. Atty. Gen. Richard K. Willard, for defendant; Jan Gnerlich and Cara Bellassai, U.S. Marine Corps., of counsel.

Robert E. Steinberg, Washington, D.C., for intervenor-defendant.

## OPINION

MOODY R. TIDWELL, III, Judge:

This case began with the filing by plaintiff of a Complaint seeking a preliminary and permanent injunction and declaratory relief and a motion for temporary restraining order to enjoin defendant from making award of a contract under a U.S. Marine Corps invitation for bids to any bidder other than itself. Plaintiff, the third lowest bidder on the procurement, charges that the lowest bid was nonresponsive to the IFB, that the second lowest bidder was not responsible, and that it, therefore, submitted the lowest responsive, responsible bid and is entitled to award of the contract.

The temporary restraining order was denied by a ruling from the bench on November 13, 1986. Shortly thereafter the Corps awarded the contract. Defendant filed a motion for summary judgment and the low bidder, now the contractor, The Sharman Company and second low bidder, GIL, Inc., intervened in the case. RUSCC 24(a)(2).

On November 26, 1986 GIL, Inc. filed a Complaint seeking to enjoin award of a contract to any bidder other than itself on the grounds that the bid of The Sharman Company was nonresponsive. The Sharman Company filed a Motion for Summary Judgment on December 1, 1986 which stated that defendant was entitled to judgment as a matter of law. For all practical purposes GIL, Inc.'s Complaint mirrored plaintiff's challenge to The Sharman Company's bid and The Sharman Company's Motion for Summary Judgment was identical to that filed by defendant.

At the December 8, 1986 hearing on plaintiff's and GIL, Inc.'s applications for injunctive relief and defendant's and The Sharman Company's Motions for Summary

Judgment, the parties and intervenors agreed, and the court concurred, that there were no genuine issues of material fact in the dispute over the responsiveness of The Sharman Company's bid.[1] In accordance therewith the court ordered, for the purposes of this litigation, that the hearing of the action on the merits and the application for a preliminary injunction be consolidated, but only as to the issue of the responsiveness of The Sharman Company's bid. RUSCC 65(a)(2). Accordingly, the instant Opinion addresses both the preliminary injunction and the case on its merits, i.e., the permanent injunction.[2] Although the two parties and the two intervenors all participated in the December 8, 1986 hearing, in the interests of brevity and comprehension, the court will discuss only plaintiff's and defendant's positions but it must be understood that in so doing the positions of the intervenors will also be aired.

## FACTS

On June 18, 1986 the United States Marine Corps issued IFB No. M00027–86–B–0035, which called for the delivery of 667 large water tank storage modules from a small business concern within 120 days of first article approval. Subsequently, in recognition that no small business could possibly supply 667 modules in 120 days, the Corps modified the IFB by extending the delivery date to require the delivery of 50 modules beginning 120 days after first article approval, and 50 modules per month thereafter until completion of delivery of all 667 modules. In all, it would take a total of 750 days under the modified delivery schedule to complete delivery of the modules.

1. Three days after the Order of the court joining the hearings on the preliminary injunction and the case on its merits, Intervenor, The Sharman Company, moved to oppose the consolidation. That motion was denied as lacking merit. The court notes, however, that on December 1, 1986, The Sharman Company filed its own motion for summary judgment requesting judgment in its favor because "there are no genuine issues of

material fact and defendant is entitled to judgment as a matter of law."

2. There are genuine issues of material fact surrounding the issue of the responsibility of GIL, Inc. It was the opinion of the parties and the court on December 8, 1986 that if that issue should need to be addressed a trial on the merits would be necessary.

The original IFB contained the following delivery provision: [3]

OFFEROR'S/BIDDER'S PROPOSED DELIVERY SCHEDULE
(To be Completed by Offeror/Bidder)

| ITEM NO. | QUANTITY | WITHIN DAYS AFTER DATE OF CONTRACT |
|---|---|---|
| 0001 | 667 each | 120 days after first article approval |

The amended delivery schedule stated:

| ITEM NO. | QTY | WITHIN DAYS AFTER DATE OF CONTRACT |
|---|---|---|
| 0001 | 667 each | Delivery of 50 each units 120 days after First Article Approval and delivery of 50 each units per month thereafter until total amount of 667 units are delivered. |

\*　　　　\*　　　　\*

Offers/Bids that propose a delivery of a quantity under such terms or conditions that delivery will not clearly fall within the applicable required delivery period specified above, will be considered nonresponsive/unacceptable and rejected. If the offeror/bidder proposes no other delivery schedule, the desired delivery schedule above will apply.

The amended delivery schedule cites to Federal Acquisition Regulation 52.212–2 (Alternate III) which permits the contracting officer to use a delivery clause "substantially" as set forth therein, "if the Government desires delivery by a certain time but requires delivery by a specified later time."

The bid form remained the same throughout the bidding process, *i.e.:*

| ITEM NO. | QUANTITY | WITHIN DAYS AFTER DATE OF CONTRACT |
|---|---|---|
| 0001 | 667 each | |

Isometrics and GIL, Inc. left the bid form blank and thereby agreed under language of the amendment to supply the modules at the desired delivery schedule, as amended. The Sharman Company, however, wrote the number "678" on the bid form in the column entitled *"WITHIN DAYS AFTER DATE OF CONTRACT."* Thus, rose the dispute. The Corps awarded the contract to The Sharman Company because it was the lowest bidder and its bid was determined to be responsive to the delivery schedule of the contract. Defendant and The Sharman Company agree that under the IFB, as amended, that The Sharman Company is obligated to deliver 667 modules within 678 days of award at an incremental rate, necessarily, to exceed 50 units per month. Plaintiff disagreed. Plaintiff argued that The Sharman Company's bid was nonresponsive to the delivery terms of the IFB, as amended, because it proposed

---

**3.** The delivery schedule contained a total of nine separate items but the only line item in question in the instant case is line item 0001.

to deliver the modules "under such terms or conditions that delivery will not clearly fall within the applicable required delivery period." Specifically, Isometrics argued that by penning the number "678" on the bid form it obligated itself to deliver all 667 modules within 678 days but was not obligated to meet the incremental 50 unit per month delivery beginning 120 days after first article approval.

## DISCUSSION

The present case is before the court on plaintiff's and intervenor GIL, Inc.'s request that the Marine Corps be enjoined from permitting The Sharman Company to perform under the recently awarded contract and on defendant's and intervenor The Sharman Company's Motions for Summary Judgment. Summary judgment is appropriate only where there are no issues of material fact in dispute and judgment is appropriate as a matter of law. *South Louisiana Grain Services, Inc. v. United States,* 1 Cl.Ct. 281, 289 (1982). This case involves no genuine issues of material fact and is ripe for resolution.

■ Defendant has a legally enforceable duty to give full and fair consideration to plaintiff's bid vis-a-vis the Sharman Company's bid, in view of Isometrics challenge that the government breached that duty by awarding the contract to The Sharman Company in the face of the latter's alleged nonresponsive bid. The specific nature of defendant's duty is to fully and fairly consider all of the bids under the IFB and the prescribed procurement guidelines. *Eagle Construction Corp. v. United States,* 4 Cl.Ct. 470, 475 (1980); *Ingersoll-Rand v. United States,* 2 Cl.Ct. 373, 376 (1983). The court in *Heli-Jet Corp. v. United States,* 2 Cl.Ct. 613 (1983) stated succinctly that:

> [t]he obligation of the government upon issuance of a solicitation is to treat *all* bidders fairly and to give full consideration to all bids. This obligation cannot be met when the government accords different treatment to different bidders. Thus, the violation of this implied duty

appears when the protestor's bid is incorrectly considered to its detriment (and other bids are properly considered) and it appears with no less force or effect when the protestor's bid is correctly considered (but when other bidders benefit from improper standards of consideration.)

*Id.* at 618 (emphasis in original).

■ This court has jurisdiction to review a pre-award contract decision made by a government agency pursuant to the Federal Courts Improvement Act of 1982, 28 U.S.C. 1491(a)(3), *Baird Corp. v. United States,* 1 Cl.Ct. 662, 664 (1983), and, once properly found, jurisdiction is not lost merely by award of the contract by the United States. *F. Alderete General Contractors, Inc. v. United States,* 715 F.2d 1476 (Fed.Cir.1983). Suit was properly filed in this case prior to award, and the court has retained jurisdiction.

As pointed out by defendant's counsel, the court is aware that its review of defendant's decision to award the contract to The Sharman Company is limited and that the court should intervene in the decisional process only if the court can determine that the decisions were "irrational or unreasonable." *Baird Corporation v. United States,* 1 Cl.Ct. 662, 664 (1983). The burden of proving that the decision was irrational or unreasonable is upon plaintiff who must establish its rights through clear and convincing evidence. *Id.* (citing *Goldammer v. Fay,* 326 F.2d 268, 270 (10th Cir. 1964)). This is not to say that defendant's pre-award decisions are unassailable. The standard of review for overturning the decision is high and such relief should be granted only if plaintiff can establish to the satisfaction of the court that there was no rational basis for defendant's decision to award a contract to a party other than plaintiff. *M. Steinthal & Co. v. Seamans,* 455 F.2d 1289, 1301 (D.C.Cir.1971). Moreover, citing language from the Senate Report on the Federal Courts Improvement Act of 1982, former Chief Judge Kozinski in *Quality Furniture Rentals, Inc. v. United States,* 1 Cl.Ct. 136 (1983) noted that, "Congress did not intend that this

court consider every alleged irregularity ... but only those irregularities which would deny a contractor a fair opportunity to compete." *Id.* at 140–41. In light of this standard of review, the issue is whether defendant, through the contracting officer, acted in an irrational and unreasonable manner, thereby abusing his discretion in making the decision to award the contract to The Sharman Company.

In *Drexel Heritage Furnishings, Inc. v. United States*, 3 Cl.Ct. 718 (1983), this court, in denying plaintiff's motion for a temporary restraining order, listed several guidelines which the court must follow in granting injunctive relief prior to the award of a contract. *Id.* at 721. Those same guidelines, with one exception,[4] apply to the present situation where the court is asked to grant declaratory and permanent injunctive relief. The guidelines are summarized as follows:

(1) The likelihood of plaintiff's "success on the merits."

(2) The "public interest" including any overriding public interest which would warrant, in exercise of sound judicial discretion, a refusal to grant injunctive relief, even if plaintiff were likely to prevail on the merits.

(3) The possibility of any "irreparable injury" to the plaintiff if the injunction is not granted, including but not limited to, the absence of adequate remedy at law and the possibility of any injury to others if the injunction is granted.

While the court must consider the same factors in granting permanent injunctive relief as it does in granting a temporary restraining order, the level of scrutiny which the court must employ is significantly higher. A temporary restraining order necessarily requires a lesser showing by plaintiff justifying such relief than does a permanent injunctive or declaratory order. The rationale behind such distinction is

quite simple. The potential for harm or disruption caused by a temporary restraining order is limited by its length; ten days or, at maximum, 20 days. In contrast, a permanent injunctive or declaratory order is without question more prejudicial to one of the parties because of its permanent nature.

Plaintiff, in this instance, carries a heavy burden in establishing a right to permanent injunctive relief in light of this court's denial of its motion for a temporary restraining order and its concomitant refusal to enjoin even temporarily, award of the contract. In order to persuade the court that it is entitled to declaratory and permanent injunctive relief, plaintiff, then, must prevail on each of the following three factors:

### I. *Success On The Merits*

■ Plaintiff and intervenor, GIL, Inc., must show that The Sharman Company's bid was not responsive to the IFB. The Marine Corps issued a modification to the IFB that stated a different delivery schedule than as originally called for. The terms of the contract did not require that the dates of delivery of all bidders be identical, but if one or more bidders offered a different delivery schedule that schedule must, at the very least, be more favorable to the government than the government's stated delivery date. Plaintiff does not disagree with the fact that alternative delivery schedules could have been bid, but only that the form of The Sharman Company's bid rendered it nonresponsive. The court disagrees.

On the cover page of its bid, The Sharman Company acknowledged IFB Amendment No. 0001, which contained the amended delivery schedule. By acknowledging receipt of the amendment, it is beyond doubt that The Sharman Company agreed to be bound by the terms and conditions of that amendment. The court is of the opin-

---

**4.** A factor to be considered in ruling on a motion for temporary restraining order and a motion for preliminary injunction is "The likelihood of plaintiff's success on the merits" (guideline No. 1 herein). In ruling on the Complaint asking for a permanent injunction and declaratory judgment, plaintiff *must* succeed on the merits. A likelihood thereof is of absolutely no further value or interest.

ion that The Sharman Company's "alternative" delivery schedule fell within the government's desired delivery schedule and was, therefore, responsive to the IFB and more beneficial to defendant. By not offering any other delivery schedule than the one desired by defendant, plaintiff, by the terms of the contract, agreed to the delivery schedule outlined above. The Sharman Company was also bound by the desired delivery schedule except to the extent that it proposed an earlier delivery schedule and waived the time permitted for first article approval. In reviewing The Sharman Company's bid, it becomes obvious that it proposed a change in the total time for delivery of the modules, but nowhere is there any indication that its proposal would affect the incremental delivery requirement. Inasmuch as The Sharman Company proposed no change to the incremental delivery requirement that would "clearly fall" outside of the government's desired delivery schedule, the court finds that The Sharman Company is required to deliver all 677 modules on an incremental basis within 678 days from the date of award of the contract and that *a fortiori*, The Sharman Company's proposed delivery schedule "clearly falls" within "the applicable required delivery schedule specified above."

Plaintiff cites *Balongas, S.A.*, 84–2 CPD ¶ 86 (July 23, 1984) and *Simmonds Precision*, 76–1 CPD ¶ 186 (March 3, 1976) in support of its argument that The Sharman Company's bid is nonresponsive. Neither case is applicable. Both deal with proffered delivery schedules beyond that mandated in the IFB. In *Balongas*, plaintiff offered to complete delivery within 165 days but the amended IFB specified that delivery must occur within 150 days. *Simmonds'* bid was also nonresponsive because it offered delivery four days after the time for delivery specified in the IFB.

As the court noted earlier, it must refrain from reversing the contracting officer's determination of nonresponsiveness unless it finds no rational basis for the contracting officer's decision. *Essex Electro Engineers, Inc. v. United States*, 3 Cl.Ct. 277, 280 (1983). Plaintiff has not met its heavy burden in this case to prove by clear and convincing evidence that the actions of defendant were irrational or unreasonable. *See Baird v. United States*, 1 Cl.Ct. 662 (1983); *Drexel Heritage Furnishings, Inc. v. United States*, 3 Cl.Ct. 718 (1983).

Accordingly, plaintiff and intervenor, GIL, Inc., failed to succeed on the merits in its attack on The Sharman Company's bid, as nonresponsive to the IFB.

## II. *Public Interest*

The court views the public interest as a balancing of the goals of preserving the integrity of the procurement process and protecting the government's interest to speedily procure necessary goods. The court has weighed the interests and is of the opinion that there are no reasons why both of the goals should not be met. Plaintiff has no argument extant that would justify the court's interference in the procurement process. By holding for defendant, the integrity of the procurement process is preserved and the Corps may proceed with its contractor towards timely completion of the contract.

## III. *Irreparable Injury/Inadequate Remedy at Law*

The court need not address these issues because of its holdings above.

As previously discussed, this Opinion addressed the issue of the responsiveness of the bid of the low bidder, and the hearing on the preliminary injunction was consolidated with the hearing of the action on the merits. Ostensibly left outstanding is the issue of the responsibility of the second low bidder, however, even if the court, *arguendo*, ruled in favor of plaintiff on the latter issue, it would be of no merit because The Sharman Company would still be the lowest responsive, responsible bidder. The court, therefore, need not address the challenge to GIL, Inc.'s responsibility.

Defendant's and The Sharman Company's Motions for Summary Judgment are allowed. The Clerk of the Court is directed

to dismiss plaintiff's and GIL, Inc.'s Complaints for Preliminary and Permanent Injunction and Declaratory Relief. No costs.