**PNM CONSTRUCTION, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 655–87C.

United States Claims Court.

Nov. 30, 1987.

---

Patrick J. Greene, Jr., Red Bank, N.J., for plaintiff.

Scott Boylan, with whom was Asst. Atty. Gen., Richard K. Willard, Washington, D.C., for defendant.

## OPINION

FUTEY, Judge.

Plaintiff, a general construction contractor which submitted the lowest bid on a contract solicited by the Department of the Air Force, brought suit in this court seeking injunctive and declaratory relief to enjoin defendant from awarding the contract to any other bidder and declare invalid defendant's determination that plaintiff is non-responsible, or alternatively to declare the contract specifications defective, enjoin any award of the contract, grant plaintiff damages for its bid preparation costs, and order a resolicitation. Defendant has asked that the injunctive and declaratory relief sought by plaintiff be denied, and has moved for an entry of summary judgment dismissing plaintiff's complaint. For the reasons stated hereinafter, the injunctive and declaratory relief sought by plaintiff is denied, and the complaint is dismissed.

## FACTS

On June 15, 1987, the United States Air Force issued an invitation for bids on Solicitation No. F28609–87–B–0029, a contract for the replacement of exterior doors and windows in residential housing at McGuire Air Force Base, New Jersey. PNM Construction, Inc. (PNM) submitted a bid for the contract and, when the bids were opened on August 6, 1987, was found to be the lowest bidder at $930,120. The Air

Force contracting officer, however, determined PNM to be a non-responsible bidder and declined to award the contract. In his determination, dated September 8, 1987, the contracting officer cited plaintiff's "previous history of poor quality workmanship and lack of timeliness" as grounds for finding that PNM was "technically incapable of performing (the) work as required by the specifications and drawings."

As plaintiff is a small business concern, the matter was referred to the Small Business Administration (SBA) under 15 U.S.C. § 637(b)(7) for a review of the procuring agency's determination. In a letter to PNM dated September 11, 1987, SBA advised that it would conduct an independent review of plaintiff's capabilities and, if a favorable decision was reached, issue a certificate of competency (COC) binding the Air Force to award the contract to PNM. Upon completion of this review, however, SBA declined to issue plaintiff a COC. By letter dated October 6, 1987, SBA advised PNM that it found "no sufficient reason for disagreeing with the decision of the contracting officer," that the "firm's production and quality assurance is unsatisfactory for this procurement."

PNM filed its complaint and motion for a temporary restraining order in this court on October 21, 1987. A telephone conference was held the same day in which defendant agreed not to award the subject contract for 30 days, up to and including November 20, 1987. The court ordered the parties to confer as to further proceedings and advise the court of their proposal in a telephone conference scheduled for October 29, 1987. Following this conference, the court ordered a hearing on the merits for November 18, 1987. Trial was held on the said date in Washington, D.C., wherein plaintiff moved for a permanent injunction. At the close of proceedings, defendant agreed to withhold the award of the contract through November 30, 1987.

## DISCUSSION

The court's jurisdiction over this pre-award contract action is conferred by 28 U.S.C. § 1491(a)(1) and (a)(3). The latter section provides as follows:

> "To afford complete relief on any contract claim brought before the contract is awarded, the court shall have exclusive jurisdiction to grant declaratory judgments, and any such equitable and extraordinary relief as it deems proper, including but not limited to injunctive relief...."

See *United States v. John C. Grimberg Co., Inc.*, 702 F.2d 1362 (Fed.Cir.1983) and *National Forge Co. v. United States*, 779 F.2d 665 (Fed.Cir.1985).

In its complaint and motion for a temporary restraining order, plaintiff alleged that injunctive relief is warranted because (1) the U.S. Air Force and SBA violated plaintiff's due process rights under the U.S. Constitution in their review of PNM's capacity to perform under the contract, (2) defendant SBA's refusal to grant a COC was arbitrary and capricious, constitutionally infirm, and exceeded its statutory jurisdiction insofar as the determination was based on the interpretation of the contract specifications rather than the bidder's responsibility, or (3) the contract specifications are defective, necessitating a resolicitation by the Air Force.

In considering whether injunctive relief should be granted in bid protest actions under 28 U.S.C. § 1491(a)(3), this court has looked to the following factors:

(1) the likelihood of plaintiff's "success on the merits;"

(2) the "public interest," including any overriding public interest which would warrant, in exercise of sound judicial discretion, a refusal to grant injunctive relief, even if plaintiff were likely to prevail on the merits;

(3) the possibility of any "irreparable injury" to the plaintiff if the injunction is not granted, including but not limited to, the absence of adequate remedy at law and the possibility of any injury to others if the injunction is granted.

*Isometrics, Inc. v. United States*, 11 Cl.Ct. 346 (1986); *Drexel Heritage Furnishings, Inc. v. United States*, 3 Cl.Ct. 718 (1983);

*Heli–Jet Corp. v. United States*, 2 Cl.Ct. 613 (1983).

## SUCCESS ON THE MERITS

As the instant case has already been tried on the merits, of course, success thereon is now a prerequisite for plaintiff to obtain the injunctive relief sought. The burden of proof is high for a plaintiff seeking to establish entitlement to injunctive relief. As stated in *Baird Co. v. United States*, 1 Cl.Ct. 662 at 664 (1983):

> "Judicial review of an agency's pre-award procurement decision is, and should be, extremely limited in scope. The court should not substitute its judgment on such matters for that of the agency, but should intervene only when it is clearly determined that the agency's determinations were irrational or unreasonable. *It is the burden of the aggrieved bidder to demonstrate that there was no rational basis for the agency's determinations....* Where injunctive relief is sought, which relief is deemed drastic in nature, the court must exercise great caution and even then, the aggrieved bidder should be made to establish its right to such drastic relief *by means of clear and convincing evidence.*" (Emphasis added.)

*Isometrics, supra, Drexel Heritage Furnishings, Inc. v. United States*, 7 Cl.Ct. 134 (1984), and *Hayes International Corp. v. United States*, 7 Cl.Ct. 681 (1985), also articulated the foregoing requirements that a disappointed bidder must clearly demonstrate that the agency determinations had no rational basis.

■ (1) In the case at bar, the contracting officer at McGuire Air Force Base contacted seven other CO's (or inspectors) overseeing PNM's performance of ten other contracts with the military. This procedure was proper in view of the federal regulations mandating that contract awardees be not only low bidders, but also responsible contractors. 48 C.F.R. § 9.103(a). One criterion for determining responsibility is that the bidder "have a satisfactory performance record," 48 C.F.R. § 9.104–1(c), and it is the contracting officer's duty to investigate the bidder's background if there is some indication that "a prospective contractor is or recently has been seriously deficient in contract performance...." 48 C.F.R. § 9.104–3(c). PNM's ratings were decidedly negative as to workmanship and timeliness, which the CO concluded "indicates an ·inability to organize and direct the work force to meet contract scheduling, *which is critical in this project.* (Emphasis added)." PNM was adjudged "technically incapable of performing work as required by the specification and drawings," and therefore a non-responsible contractor. Upon review of the subject determination and the testimony given at trial, the court finds the contracting officer's ruling rational and eminently reasonable.

■ Plaintiff argues that its due process rights under the U.S. Constitution were violated by the Air Force in that prior, to the determination of non-responsibility, it was not provided with any information upon which the determination was based nor given any · opportunity to respond. Moreover, plaintiff states that the non-responsibility determination here at issue was the third such determination by the same procuring agency this year, indicating a systematic pattern of rejection by the government of its contract bids. Plaintiff cites *Related Industries, Inc. v. United States*, 2 Cl.Ct. 517 (1983), for the proposition that such conduct by the government constitutes a violation of a bidder's due process rights and, as such, is grounds for injunctive relief. *Related Industries, supra*, however, involved a significantly different fact situation. Plaintiff therein, a small business engaged in the manufacture · of sleeping bags, was low bidder on a government contract but determined by the contracting officer to be non-responsible based on the fact that plaintiff's president and sole shareholder, Mr. Martin, was consultant to another contractor which had been rejected on previous solicitations for lack of integrity, tenacity, and perseverance, and a poor performance record. At the time of the determination of non-responsibility the contracting officer advised plaintiff that not only its current bid, but

all future bids proferred by that company or any other company with which Mr. Martin was associated, would be rejected. The court held that the CO's action amounted to a de facto debarment of plaintiff and Mr. Martin without following the applicable debarment procedures set forth in DAR 1–604.3 (32 C.F.R. § 1–604.3 (1982)), and also violated plaintiff's due process rights under the 5th and 14th amendments of the Constitution. With regard to this latter finding, the court held that "a determination by governmental authority stigmatizing a person as so lacking in integrity that he is to be deprived of property or the liberty to enjoy rights which he would otherwise enjoy must be preceded by written notice of the facts upon which the charge is based and a reasonable opportunity to submit facts in response." *Related Industries v. United States*, 2 Cl.Ct. at 526.

In the case at bar, the CO's determination of non-responsibility was not based on a finding that PNM lacked integrity, but rather that it was short on competence. Thus, the determination did not stigmatize plaintiff's character in the manner of *Related Industries*. Moreover, neither the contracting officer nor the procuring agency involved herein made any statements or acted in any manner indicating that PNM has been effectively debarred from future contracts. At trial, PNM's president, Peter Papadatos, testified that plaintiff had been awarded two contracts by the military since submitting the bid at issue in this case last July—one of which was at McGuire AFB.[1] Mr. Papadatos also testified, with regard to previous determinations of non-responsibility, that "... a couple of times we did have a couple of mistakes and—in one particular contract I forgot to put in a unit price."[2] Thus, the record does not reveal any systematic effort by the procuring agency here in question, or the military in general, to reject all of PNM's contract bids.

■ Plaintiff's argument that it should have been accorded the right to review the facts collected by the contracting officer and respond thereto prior to the CO's determination of non-responsibility cannot be sustained. As the Air Force contracting officer testified at trial, prospective contractors are requested to submit references after the bid opening to establish their responsibility. On the basis of these references PNM was determined to be non-responsible.[3] Federal acquisition regulations do not mandate any further right of hearing to a prospective contractor prior to the CO's determination. Absent clear and convincing evidence that the CO's decision was irrational or that plaintiff was de facto debarred, the court rejects plaintiff's contention that its due process rights were violated.

(2) With regard to SBA's investigation of PNM prior to its denial of a certificate of competency, plaintiff argues that its due process rights were violated because SBA did not reveal the information collected or give plaintiff the right to evaluate or respond to such information prior to its ruling. Furthermore, plaintiff contends that SBA exceeded its statutory authority by considering the contract specifications in its review and basing its negative ruling on an interpretation of the specifications at variance with the plaintiff's. As such, SBA improperly based its determination of PNM's competency on plaintiff's responsiveness to the contract solicitation, which is the province of the contracting officer and the procuring agency, rather than on PNM's responsibility as a contractor. The court is unpersuaded by plaintiff's arguments.

■ The record is abundantly clear that SBA's investigation of PNM's competency was thorough and unbiased. SBA's industrial specialist, Dean Koppel, testified at trial as to the agency's procedure in reviewing a COC application:

"We get a referral from a buying activity for non-responsibility.... We contact the company ... explain ... the COC program ... which is basically a chance

---

1. Transcript of Proceedings, p. 49.

2. Ibid.

3. Transcript of Proceedings, p. 69.

■

for the contractor to explain the situation.... It is completely voluntary. The contractor indicates that he is willing to apply; we send him out a packet of information and forms requesting certain information ... we do an official review of the application. It is then assigned to someone to go out and go over this information with the contractor ... then the industrial specialist ... write(s) a report and makes(s) a recommendation to a committee that ... votes whether or not to issue the COC...." [4]

Mr. Koppel also testified that:

"We have a standard operating procedure which is.... a codified federal regulation [5].... spell(ing) out exactly what our responsibilities are as far as contacting the prospective contractor, in defining the issues and giving him his opportunity to refuse and discuss these issues." [6]

Plaintiff's counsel elicited no testimony at trial and the record is devoid of any other evidence that SBA deviated from its standard operating procedure or in any manner deprived plaintiff of the right to submit pertinent information and explain its case for a COC. In his report which was submitted to the Certificate of Competency Review Committee, Mr. Koppel summarized his findings on PNM as follows:

—Technical capability acceptable;
—Plant, facilities, and equipment satisfactory;
—Material availability unacceptable;
—Quality control unacceptable;
—Performance capability unacceptable;

Mr. Koppel rated PNM's performance during the past 12 months as "marginal to average," and recommended that a COC not be issued for the contract at issue.

The committee accepted this recommendation and declined to issue plaintiff a COC. The court considers this ruling to be eminently rational and reasonable in light of the information generated in the industrial specialist's investigation. Moreover,

the court notes that the SBA pointedly limited its negative ruling to "this instance" and expressed the hope that its determination(s) could be otherwise in "future procurements." Thus, the earmarks of a systematic exclusion of PNM from procurement opportunities, rising to the level of a de facto debarment, are absent from the SBA ruling.

▮ Regarding the contract specifications, plaintiff argues that SBA overstepped its bounds in denying a certificate of competency on the grounds that the windows PNM proposed to use did not meet the contract specifications. PNM's bid included the use of windows with .050" aluminum extrusions, rather than .060" as called for in section 2.1.2 of the solicitation, although plaintiff asserts that the solicitation could reasonably be interpreted to sanction the windows it proposed. A review of the trial testimony and documentation of record, however, shows that SBA's determination was not based on the window specifications alone, but rather on broader evidence of PNM's non-responsibility of which the non-conforming windows were a major, but not exclusive, item.

At trial, the chairman of the SBA review committee which ruled on PNM's application, George Guarella, testified on the SBA's reasoning as follows:

"... we had found ... that the firm's record was marginal to fair at best ... the concern reappeared for the firm's ability to control quality inasmuch that (sic) they apparently offered window products which were not meeting the specification ... that the second offer of a window product also failed, and in addition ... failed in the timeliness of delivery.... We were concerned with (1) had the firm recognized they would have to exert some control over what materials they would have to use and (2) what remedies they might have taken to prepare for that situation...." [7]

---

**4.** Transcript of Proceedings, pp. 16–17.

**5.** 13 C.F.R. § 125.5(d)–(g).

**6.** Transcript of Proceedings, p. 17.

**7.** Transcript of Proceedings, p. 103.

This testimony indicates a broad concern with PNM's overall work performance and timeliness. Mr. Guarella went on to testify that, in ruling on the COC application of a contractor with a marginal record:

> "... we relied on the planning for the forthcoming job to see if it is that thorough to have anticipated the problems and to have prepared to deal with them if not already resolved.... If it is on the fence ... we would probably find in favor of the contractor ... we are here to help small businesses, and we are willing to see things their way if at all possible." [8]

The various shortcomings in PNM's material procurement and overall management, together with plaintiff's track record of marginal and unsatisfactory performances on other government contracts, provided ample grounds for SBA to deny PNM a certificate of competency in this instance. In considering the contract specifications as to window dimensions and the conformity of plaintiff's bid thereto, the SBA did not exceed its statutory authority. Rather, this aspect of its review was a proper exercise of the agency's investigative responsibilities and helped build a solid foundation for its ruling that PNM's "production and quality assurance is unsatisfactory."

■ (3) Plaintiff also asserts, as an alternative argument, that the window specifications in the contract were defective, necessitating a resolicitation of bids. The documentation of record and testimony at trial establishes that aluminum windows with .060" extrusions or vinyl-clad windows with .031" extrusions, as called for under "Materials" in sections 2.1.2 and 2.1.3 of the specifications, are not a standard product of any of the acceptable manufacturers—Rolscreen Co./Pella, Marvin, Anderson, or equal—listed in section 1.2.3 of the specifications under "Quality Assurance." However, the evidence adduced also indicates that one or more of the named manufacturers can produce custom-made windows that meet the specifications. Thus, plaintiff's argument that the window specifications were defective is erroneous.

The court notes that custom-made windows would almost certainly have been more expensive. Had plaintiff properly priced custom-made windows prior to submitting its bid, and included the cost thereof in the contract price, PNM may not have been low bidder. Plaintiff cannot use its status as low bidder, which likely was a direct result of its failure to meet the contract specifications, as a wedge to force a resolicitation of bids.

Thus, plaintiff has failed to carry its burden of proof with respect to the merits of this action. It has failed to demonstrate that the rulings issued by the Air Force contracting officer or SBA were irrational, violative of plaintiff's due process rights, or otherwise contrary to law. It has also failed to establish that the contract specifications were defective.

## PUBLIC INTEREST/IRREPARABLE INJURY

■ Plaintiff did not address the above factors which the court must consider in an action for injunctive relief, either in its original filings or at trial. Nevertheless, this court finds that the public interest in this case will best be served by an expeditious award of the contract in question to a responsible contractor. No public interest would be served by further delay in favor of a low bidder who has been determined in rational and reasonable decisions by two government agencies to be non-responsible. Furthermore, plaintiff cannot demonstrate any irreparable injury in the absence of an injunction since the record establishes that PNM has not been debarred, de facto or otherwise, and has been awarded two other contracts from the military, including one from McGuire AFB, since proferring its bid on the contract here at issue.

## CONCLUSION

For the reasons stated hereinabove, plaintiff is not entitled to the equitable relief sought in the complaint filed on October 21, 1987. IT IS ORDERED that final judgment be entered denying the equitable

8. Ibid, p. 107.

relief requested and dismissing the complaint.

No Costs.